## Imperial Elkhorn Coal Company v. Webb, et al.

(Decided December 17, 1920.)

### Appeal from Letcher Circuit Court.

1. Injunction—Restraint Upon Completion of Building.—The owner of the surface of the property will not be enjoined at the instance of a coal company from the erection of a building where the coal company only owns the mineral rights in the property unless such restraint is necessary in the operation of its mines,

2. Injunction—What Mining Privileges Include.—Mining privileges include the right to go upon the land and operate for coal, take out and sell the product, and do all the things reasonably incident to that work.

3. **Injunction—Enjoyment of Surface Owner of Mineral Lands.**—The surface owner has the right to enjoy the lands free from annoyance, except such as reasonably arises from the opening, exploration, mining and marketing of the minerals granted.

D. D. FIELDS & DAY for plaintiff.

DAVID HAYS, CHARLES H. MORRIS and J. C. JONES for defendants.

OPINION BY JUDGE SAMPSON—Overruling motion to grant injunction.

Webb and Franklin own the surface of the land in which the Imperial Elkhorn Coal Co. and its grantors own the coal and certain other minerals under and by a deed made in 1887, and which deed recites that the grantee of the coal and mineral shall have "all the usual mining privileges and timber necessary for mining purposes, reserving to ourselves the fee simple to the surface of said farm." On adjoining coal property the coal company has heretofore installed a coal mining plant with tipple, railroad switch and a large number of residences for the occupancy of the men employed by it as miners of coal.

A few months before the commencement of this action defendant Webb sold to his co-defendant Franklin a lot 50x40 feet from the surface of the property in controversy, being a part of the same land from which Webb or his predecessors in title had sold the mineral by the deed above mentioned, and Franklin proceeded to erect a store house on the lot in which to carry a line of merchandise and keep the postoffice. Immediately upon learning this the coal company protested to Franklin against the erection of the store, and when he failed to desist from the work instituted this action to obtain a temporary restraining order preventing Franklin from completing the building. Franklin and Webb moved the judge of the Letcher circuit court to set aside the order granting the restraining order and upon hearing this motion was sustained, and at the same time the motion of the coal company for a permanent injunction was denied, and the company has entered a motion before me as a judge of the Kentucky Court of Appeals to grant the injunction refused by the circuit judge. Without passing upon the preliminary question as to whether such a motion is here tenable, we must deny the relief sought by the company upon the merits of the controversy, for obvious reasons.

The coal company does not own the surface of the land, and cannot use or occupy it except in a reasonably necessary way in mining and removing the mineral granted by the deed under which it claims.

By the term "all the usual mining privileges" used in the deed the coal company has and may enjoy the right to go on the land and explore for, open and operate coal or other mines, take out and sell the product, and do all the things reasonably incident to that work. The erection and maintenance of a tipple, railroad and mining camp is a necessary part of this work and may be held to have been in the contemplation of the parties making the deed granting "all the usual mining privileges," but the mining company must not take or appropriate to its use the surface of the lands unnecessarily to the injury or annoyance of the owner of the surface.

The surface owner has the right to enjoy the lands free from annoyance, except such as reasonably arises from the opening, exploration, mining and marketing of the minerals granted. The corresponding rights of the owner of the surface and the owner of the mineral—two estates—is stated in 27 Cyc., page 688, as follows:

"The owner of mineral has of course the right to remove the same, and a grant or reservation of minerals carries with it as incidents a right to open a mine by sinking shafts, and the right to use such lands as are necessary in getting out and removing the minerals, and generally to employ all the necessary appliances requisite to the proper working of the mines. But the surface rights are limited to so much of the surface and such uses thereof as are reasonably necessary to properly get at and carry away the minerals, and in the absence of an express grant or license, the mineral owner has no right to use appliances and facilities belonging to the surface owner even though such use will cause the latter no inconvenience. What improvements are reasonably necessary for the proper working of a mine, and to what extent the surface may be occupied for that purpose are questions for the jury. Where specified surface rights are expressly granted or reserved in connection with the mineral rights, the intention of the parties and the general rules of construction govern in determining the extent of the mineral owners' rights."

The evidence in this case shows that no building or other improvements of consequence had been erected or attempted by the coal company on the 205 acres in ques-

tion up to the time of the commencement of these proceedings; that Franklin only intended to erect one rather small house, and this not in the proposed railroad right of way or near a tipple or coal opening; that there was plenty of room in the level five acre tract, outside the 50x40 foot lot owned by Franklin and on which he was building, to place all the houses and other improvements necessary or contemplated for the development, operation, mining and marketing of the coal and other minerals from the Webb premises. As Franklin and Webb had and have the right to use the surface of the land in any lawful way which does not materially interfere with the mining business of the company owning and operating the minerals, and it does not appear from the record that the building of the house would do so, the company was not entitled to the restraining order in the first instance and is not now entitled to injunctive relief against either Webb or Franklin.

The motion to reinstate the restraining order is overruled.

The whole court sat with me in the consideration of this motion and concur in the conclusion reached.